UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARIO ALFRED MEDINA, JOS VENTURA, MARIO DAVALOS, JUAN GALDUMEZ, FREDY DAVILA, ALESSANDRO SABINO DASILVA, OSCAR CARBAJAL, CESAR GONZALES, and EDUARDO BERSOSA, Plaintiffs, | : : : : : : : : |
| v. | : No. 3:09cv1430 (MRK) : |
| UNLIMITED SYSTEMS, LLC and ROBERT PSZCZOLA, | : : : |
| Defendants. | : |

**RULING AND ORDER**

Plaintiffs brought this action alleging that Defendants Unlimited Systems, LLC ("Unlimited Systems") and Robert Pszczola failed to pay wages owed to Plaintiffs for their work, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), as well as Connecticut statutory and common law. On February 4, 2010, the Court entered a default judgment [docs. # 10, # 11] against each of the Defendants and awarded Plaintiffs $49,707.94 in damages and $6,851.84 in attorneys fees and costs.

Currently pending before the Court is Plaintiffs' Motion to Enforce Judgment Against US Stucco, LLC as Successor to Unlimited Systems, LLC [doc. # 16]. The Court held an evidentiary hearing on the motion on October 18, 2010, at which Mr. Pszczola and his wife, Beata Pszczola, testified. The Court also received into evidence certain exhibits. Based on the totality of the evidence presented, the Court concludes that US Stucco, LLC ("US Stucco") is the successor in interest to

1

Unlimited Systems and therefore, enforces the default judgment [doc. # 11] against US Stucco.

**I.**

Unlimited Systems performed a variety of work, including metal or steel framing, exterior insulation and finish systems ("EIFS"), and stucco and stone work. The President of Unlimited Systems was Robert Pszczola. According to Mr. Pszczola's testimony at the evidentiary hearing, he and his wife were each fifty percent owners of Unlimited Systems. Ms. Pszczola also did bookkeeping for the company. Unlimited Systems (and Mr. Pszczola himself) ran into financial difficulties, which explains both the company's failure to pay wages to Plaintiffs and its default in the current litigation. Mr. Pszczola testified that he and his wife were the only two officers or members of Unlimited Systems.

Around June 15, 2009, a few months before this action commenced and at a time when Unlimited Systems was insolvent, Mr. Pszczola created US Stucco. A month later, on July 20, 2009, Mr. Pszczola transferred his interest in US Stucco to his wife for the sum of $1.00; no appraisal of US Stucco was completed before it was transferred to Ms. Pszczola. US Stucco bought its vehicles and some of its equipment from Unlimited Systems. According to Ms. Pszczola's testimony, Mr. Pszczola is either the President or Vice-President of US Stucco. Mr. and Ms. Pszczola are the only two officers of US Stucco. Ms. Pszczola also does the bookkeeping for the company. According to Mr. Pszczola's own testimony, Mr. Pszczola runs the business for US Stucco – as he did for Unlimited Systems. In addition, when Mr. Pszczola filed for personal bankruptcy he listed US Stucco as a co-debtor on a number of debts; Ms. Pszczola testified at the evidentiary hearing that she was not aware of that fact.

The Connecticut Secretary of the State lists US Stucco's business address as the address at

which Unlimited Systems had its offices. *See* CONCORD Listing for Unlimited Systems LLC, Ex. 2 to Mem. in Support of Mot. to Enforce Judgment [doc. # 17-3] at 2 (listing Unlimited Systems' Business Address and Mailing Address as "28 Costello Place, Newington, CT 06111"); CONCORD Listing for US Stucco, LLC, Ex. 6 to Mem. in Support of Mot. to Enforce Judgment [doc. # 17-7] at 2 (listing US Stucco's Business Address and Mailing Address as "28B Costello Place, Newington, CT 06111"). US Stucco does not operate from the same suite that Unlimited Systems occupied in that building, apparently because, as Ms. Pszczola testified, US Stucco has fewer employees than Unlimited Systems had. Ms. Pszczola is a half owner of the company that owns the building in which Unlimited Systems was located and in which US Stucco is now located.

In her testimony at the evidentiary hearing, Ms. Pszczola indicated that US Stucco was created to focus on EIFS work. However, Mr. Pszczola testified that US Stucco actually does all of the types of work that Unlimited Systems previously performed, including metal and steel framing, EIFS, stucco and stone work, and general contracting. Unlimited Systems stopped taking on projects at or around the time US Stucco was created. US Stucco purchases supplies at Sam's Club under Mr. Pszczola's membership, just as Unlimited Systems did while it was in business. As a subcontractor, US Stucco contracts with many of the same general contractors with which Unlimited Systems previously contracted. The two EIFS project managers for US Stucco previously worked for Unlimited Systems; indeed, all US Stucco employees previously worked for Unlimited Systems. US Stucco employees use the same tools that they used when they were working for Unlimited Systems. Finally, US Stucco uses vehicles and equipment that Unlimited Systems used.

At the time of the evidentiary hearing, much of the content on US Stucco's website was identical to content that had appeared on Unlimited Systems' website. One of the projects listed on

3

the US Stucco website was Berkshire Plaza. *See* Ex. 8 to Mem. in Support of Pls.' Mot. to Enforce Judgment [doc. # 17-9] at 2. Berkshire Plaza was the project on which Plaintiffs worked for Unlimited Systems, and which formed the basis of Plaintiffs' lawsuit against Unlimited Systems. Another project listed on US Stucco's website – identified as "Hampton Inn, VT"– included the description "Unlimited Systems LLC was hired to fix and repair EIFS." *See id.* at 3. While Mr. Pszczola claimed at the evidentiary hearing that his webmaster had erred in using the Unlimited Systems web pages for the US Stucco website, the webmaster did not testify, and as of the day of the evidentiary hearing, the web pages were still online even though Plaintiffs had focused a great deal of attention on those web pages in their briefing.

## II.

In the Second Circuit, the test for successor liability under the FLSA remains unresolved. In this case, there are three options: the traditional common law successor liability rule and exceptions; the broader "substantial continuity" standard that the Supreme Court has endorsed in some federal labor law cases; and the Connecticut state common law standard. Although in this case the Court ultimately need not decide which test applies, the Court will set forth all three standards.

## A.

Under traditional common law rules, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities. *See New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006) ("*Nat'l Serv. Indus. II*"). There are four common exceptions to this general rule: (1) the purchaser expressly or impliedly assumed the seller's tort liability; (2) there was a consolidation or merger of the seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) the transaction was entered into fraudulently to escape

4

obligations related to the seller's liabilities. *See id.* A purchasing corporation may be deemed a "mere continuation" of the seller when only one corporation exists following the transfer of assets from the selling corporation to the purchasing corporation, and there is "identity of stock, stockholders, and directors between the successor and predecessor corporations." *See New York v. Nat'l Serv. Indus., Inc.*, 352 F.3d 682, 685 (2d Cir. 2003) ("*Nat'l Serv. Indus. I*") (citation and quotation marks omitted). A court may conclude that there has been a "*de facto* merger" of the two corporations if it finds: "(1) continuity of ownership; (2) cessation of ordinary business and dissolution of the [seller] as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the [business's] uninterrupted continuation . . . ; and (4) continuity of management, personnel, physical location, assets, and general business operation." *Nat'l Serv. Indus. II*, 460 F.3d at 209.

The mere continuation and *de facto* merger theories are substantially similar, and are often treated as a single exception. *See Douglas v. Stamco*, 363 Fed. App'x 100, 102 (2d Cir. 2010); *see also Berg Chilling Sys. v. Hull Corp.*, 435 F.3d 455, 464 (3d Cir. 2005) (noting that the *de facto* merger and mere continuation exceptions "are generally treated identically"). For both, continuity of ownership is the key factor. *See Ruiz v. Blentech Corp.*, 89 F.3d 320, 325 (7th Cir. 1996); *Cargo Partner AG v. Albatrans Inc.*, 207 F. Supp. 2d 86, 95 (S.D.N.Y. 2001); *see, e.g.*, *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 46 (2d Cir. 2003) (expressing confidence that there cannot be a *de facto* merger absent continuity of ownership under New York law); *National Gypsum Co. v. Continental Brands Corp.*, 895 F. Supp. 328, 337 n.10 (D. Mass. 1995) (noting "[a] . . . focus on continuity of ownership . . . in the early 'mere continuation' cases" (citations omitted)).

**B.**

In the federal labor law context, the Supreme Court has held that a purchasing corporation sometimes may qualify as a successor in interest even when the purchaser would not constitute a mere continuation of the selling corporation under the traditional common law standard. *See B.F. Goodrich v. Betkoski*, 99 F.3d 505, 519 (2d Cir. 1996) (discussing the alternative approach). A purchasing corporation may be liable for violations of the National Labor Relations Act, 29 U.S.C. §§ 151-169) ("NLRA"), or the Labor Management Relations Act, 29 U.S.C. §§ 141 et seq. ("LMRA"), when there is simply "substantial continuity" between the selling and purchasing business enterprises. *See Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 43-45 (1987) (NLRA); *Howard Johnson Co., Inc. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249, 263-64 (1974) (LMRA). In contrast to the traditional common law mere continuation exception, continuity of ownership is not crucial for a finding of "substantial continuity." *See Betkoski*, 99 F.3d at 519 (contrasting the "substantial continuity" rule to the traditional "mere continuation" exception). No one factor is determinative, and substantial continuity is determined by a "totality of the circumstances." *See Fall River*, 482 U.S. at 45 (citation and quotation marks omitted).

At the heart of the Supreme Court's endorsement of the substantial continuity test in the NLRA context has been the Supreme Court's recognition that allowing a successor business to avoid liability for violations of its predecessor could defeat "the employees' legitimate expectation . . . that the unfair labor practices [would] be remedied." *See Golden State Bottling Co., Inc. v. NLRB*, 414 U.S. 168, 184 (1973). The Court has explained: "The refusal to adopt a mode of analysis requiring the [National Labor Relations] Board to distinguish among mergers, consolidations, and purchases

6

of assets is attributable to the fact that, so long as there is a continuity in the 'employing industry,' the public policies underlying the doctrine will be served by its broad application." *Id.* at 182 n.5.

In *B.F. Goodrich v. Betkoski*, 99 F.3d 505, the Second Circuit held that the substantial continuity test applied by the Supreme Court in the NLRA context should also be used to determine whether purchaser corporations could be held liable for seller corporations' violations of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). The Second Circuit reasoned that "the substantial continuity test is more consistent with [CERCLA's] goals. . . [than] the older and more inflexible 'identity' rule." *Id.* at 519. However, following the Second Circuit's decision in *Betkoski*, the Supreme Court held that CERCLA had not "displaced or fundamentally altered common law standards of limited liability." *See United States v. Bestfoods*, 524 U.S. 51, 70 (1998); *see also Yankee Gas Serv. Co. v. UGI Utilities, Inc.*, 616 F. Supp. 2d 228, 240-43 (D. Conn. 2009) (discussing *Bestfoods*). The Supreme Court observed: "CERCLA is [] like many other congressional enactments in giving no indication that 'the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute.'" *Bestfoods*, 524 U.S. at 63 (citation omitted). The Second Circuit took the Supreme Court's *Bestfoods* holding to mean that in *Betkoski*, it had incorrectly "adopt[ed] a special [successor liability] rule for use in CERCLA cases," *see Nat'l Serv. Indus. I*, 352 F.3d at 685-86, and concluded that the substantial continuity doctrine was not "part of the federal common law for CERCLA purposes." *Id.* at 687. However, the Second Circuit also acknowledged that "[i]n *Bestfoods*, the Supreme Court expressly declined to decide whether courts should apply state or federal common law under CERCLA." *Id.* at 687 n.1. When the Second Circuit revisited successor liability under CERCLA in *National Service Industries I* and *II*, it was able to avoid deciding whether state or federal common

7

law applied because it found that New York's successor liability rule was virtually identical to the traditional common law rule. *See id.*; *Nat'l Serv. Indus. II*, 460 F.3d at 203.

The Second Circuit has not decided whether the substantial continuity standard used in the NLRA context also applies in the FLSA context. *See Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 289 n.10 (E.D.N.Y. 2007). The FLSA itself does not address the issue of liability for successor employers. *See Steinbach v. Hubbard*, 51 F.3d 843, 845 (5th Cir. 1995). However, the Second Circuit has observed that the FLSA has a "'remedial' purpose," and that "Congress intended [the statute] to 'have the widest possible impact in the national economy.'" *See Barfield v. N.Y. City Health & Hosp. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) (citation omitted). Therefore, in the context of determining whether an employee-employer relationship exists for the purposes of the statute, the Second Circuit has taken a "flexible" approach, *id.* at 141-42, and has noted that the Supreme Court "has instructed that the determination of whether an employer-employee relationship exists for the purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'" *Id.* at 141 (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)).

When faced with questions of successor liability under the FLSA and other employee-protection statutes, several courts outside the Second Circuit have applied versions of the substantial continuity test for successor liability endorsed by the Supreme Court in the NLRA context. *See Steinbach*, 51 F.3d at 846-47 (applying a substantial continuity standard and determining that appellee was a successor, but ultimately holding that the goals of the statute and broader equity principles weighed against imposition of liability for the predecessor's FLSA violations in that case); *Chao v. Concrete Mgt. Resources, L.L.C.*, No. 08-2501-JWL, 2009 WL 564381 (D. Kan. Mar. 5, 2009) (FLSA); *Brock v. LaGrange Equip. Co.*, No. CV 86-0-170, 1987 WL 39105 (D. Neb. July 14, 1987)

(FLSA); *see also Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 781-83 (9th Cir. Sept. 27, 2010) (FMLA); *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 748 (7th Cir. 1994) (ADEA); *Leib v. Georgia-Pacific Corp.*, 925 F.2d 240, 244-45 (8th Cir. 1991) (Vietnam Era Veterans' Readjustment Assistance Act of 1974); *Bates v. Pac. Maritime Ass'n*, 744 F.2d 705, 709-10 (9th Cir. 1984) (Title VII); *Trujillo v. Longhorn Mfg. Co., Inc.*, 694 F.2d 221, 225 (10th Cir. 1982) (Title VII). While the courts that have applied a substantial continuity standard to determine successor liability in the federal labor law context do not all define the standard in exactly the same way, the various incarnations of the substantial continuity test are based on the principle that "[t]he inquiry is not merely whether the new employer is a successor in the strict corporate-law sense of the term." *See Sullivan*, 623 F.3d at 781 (quotation marks omitted).

Although the Second Circuit has not designated a standard for determining successor liability for FLSA violations, courts in the Eastern District of New York that have dealt with successor liability under the FLSA have applied New York's common law successor liability test, as implemented by the Second Circuit in the CERCLA context post-*Bestfoods*. *See Vasquez v. Ranieri Cheese Corp.*, No. 1:07cv464 (ENV) (VVP), 2010 WL 1223606, at *10 (E.D.N.Y. Mar. 26, 2010); *Kaur*, 643 F. Supp. 2d at 289; *see also Said v. SBS Electronics, Inc.*, No. 1:08cv3067 (RJD) (JO), 2010 WL 1287080, at *3-*4 (E.D.N.Y. Mar. 31, 2010) (finding no successor liability under a *de facto* merger theory because the evidence did not establish continuity of ownership).

Only Second Circuit district courts in the Eastern District of New York have analyzed successor liability under the FLSA in any detail.[1] However, courts in the Southern District of New

---

[1] In a recent post-trial opinion and order regarding damages in a FLSA case, a Magistrate Judge in the Southern District of New York mentions that "[p]rior to trial, the Court . . . . found that there was successor liability between [two companies] . . . based on the fact that there was substantial

9

York, the Western District of New York, and the District of Connecticut have applied a version of the Supreme Court's "substantial continuity" test to evaluate successor liability for Title VII violations. *See, e.g.*, *Molfese v. Fairfaxx Corp.*, No. 3:05cv317 (VLB), 2006 WL 1438582, at *3 (D. Conn. May 12, 2006); *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 510-11 (W.D.N.Y. 2007); *Abdel-Khalek v. Ernst & Young, L.L.P.*, 1:97cv4514 (JGK) (MHD), 1999 WL 190790, at *7 (S.D.N.Y. Apr. 7, 1999); *Long v. AT&T Info. Sys., Inc.*, 733 F. Supp. 188, 208 (S.D.N.Y. 1990). The substantial continuity test that those district courts have applied in the Title VII context examines not only whether there has been substantial continuity in operations, but also whether the purchasing corporation had notice of the charges against the selling corporation, and whether the predecessor corporation has the ability to provide relief. *See, e.g.*, *Nichols Gas & Oil*, 518 F. Supp. 2d at 512.

### C.

There is no Connecticut Supreme Court decision that defines the requirements for successor liability. The Connecticut Appellate Court has quoted treatises and Second Circuit cases to articulate Connecticut's successor liability standard. *See Chamlink Corp. v. Merritt Extruder Corp.* 96 Conn. App. 183, 187 (2006). Despite the lack of relevant Connecticut Supreme Court decisions, at least one court in the District of Connecticut has been able to discern and apply specific successor liability doctrines that have developed within the state common law. *See Altman v. Motion Water Sports, Inc.*, --- F. Supp. 2d ---- , 2010 WL 2747306, *5-*13 (D. Conn. 2010).

---

continuity between the businesses, and there was the same workforce, same job titles, same supervisors, same machinery, and same products." *See Wong v. Hunda Glass Corp.*, No. 1:09-cv-04402 (RJS) (RLE), 2010 WL 2541698, at *1 (S.D.N.Y. June 23, 2010) (citing *Fall River*, 482 U.S. at 43). But there is no separate opinion in which the court provides a more thorough explanation of its application of the substantial continuity standard.

In Connecticut, the general rule is the same as the traditional common law rule: "The mere transfer of the assets of one corporation to another corporation or individual generally does not make the latter liable for the debts or liabilities of the first corporation." *See Chamlink*, 96 Conn. App. at 187 (citation and quotation marks omitted). The four main exceptions to that rule under Connecticut common law are also familiar: (1) a purchaser expressly or impliedly agrees to assume the liabilities of the seller; (2) the purchaser is a mere continuation of the seller; (3) the companies merge; or (4) the transaction is entered into fraudulently to escape liability.[2] *See id.* at 188. However, under Connecticut common law, the "mere continuation" exception is broader and more flexible than the traditional common law "mere continuation" exception. Specifically, Connecticut courts recognize the "substantial continuity" or "continuity of enterprise" theory that the Second Circuit articulated in *Betkoski*. *See Kendall v. Amster*, 108 Conn. App. 319, 332 (2008); *see also Chamlink*, 96 Conn. App. at 187-88 (finding that the trial court's determination that purchaser company was a "mere continuation" was valid under either the traditional common law standard or the "continuity of enterprise" theory).

While the Second Circuit acknowledges that "the [continuity of enterprise] rule is generally presented as a variant of the mere continuation exception," *see Nat'l Serv. Indus. I.*, 352 F.3d at 686, it has construed "mere continuation" and "continuity of enterprise" as separate theories. *See id.* at

---

[2] In addition to the four common law exceptions, Connecticut courts recognize a product line continuation exception. *See, e.g.*, *Pastorick v. Lyn-Lad Truck Racks*, No. CV960562426S, 1999 WL 608674, at *2 (Conn. Super. Ct. Aug. 3, 1999). In this case, Plaintiffs argue that US Stucco is liable as a successor under either the "mere continuation" exception or the "*de facto* merger" exception. *See* Mem. in Support of Mot. to Enforce Judgment [doc. # 17] at 5. In an aside, Plaintiffs also suggest that US Stucco might be liable as a successor under the fraudulent transfer exception. *See id.* at 7. Plaintiffs have not argued that US Stucco is liable as a successor under the product line continuation exception, so the Court need not consider whether that theory applies in this case.

11

685. By contrast, Connecticut courts treat "continuity of enterprise" as their preferred version of the "mere continuation" exception, essentially defining "mere continuation" as "continuity of enterprise." *See Kendall*, 108 Conn. App. at 331-32; *see also Altman*, 2010 WL 2727306, at *13 n.8 (concluding that given the decision in *Kendall*, "it must be said that the continuity-of-enterprise exception to successor liability is now incorporated into Connecticut's common law").

Factors that Connecticut courts typically consider to determine whether a business is a "mere continuation" include: continuity of management, personnel, physical location and general business operations; continuity of shareholders; cessation of the predecessor business shortly after the successor entity is formed; and whether the purchaser business holds itself out as the effective continuation of the seller. *See S. Conn. Gas Co. v. Waterview of Bridgeport Ass'n, Inc.*, No. CV054005335, 2006 WL 1681005 (Conn. Super. Ct. June 1, 2006); *Sav. Bank of Manchester v. Bruce R. Daly, Mechanical Contractor, Inc.*, No. CV020813164S, 2004 WL 3130581, at *3 (Conn. Super. Ct. Dec. 23, 2004); *A.G. Assocs. of Newington Britain v. Parafati*, No. CVN0041808NE, 2002 WL 1162890, at *3 (Conn. Super. Ct. Apr. 11, 2002). "However, the proponent of successor liability need not necessarily establish all of these factors." *S. Conn. Gas*, 2006 WL 1681005, at *2 (quoting *Bowen Eng'g v. Estate of Reeve*, 799 F. Supp. 467, 487-88 (D.N.J. 1992)).

Thus, unlike courts in New York and other States that apply traditional common law successor liability rules, Connecticut courts do not view continuity of ownership as an essential requirement for a business to be deemed a mere continuation. *See, e.g.*, *Kendall*, 108 Conn. App. at 331; *S. Conn. Gas*, 2006 WL 1681005, at *2-*3; *see also Altman*, 2010 WL 2747306, at *8 (explaining why the "total lack of continuity of shareholders and directors" would be "fatal" if the court applied the traditional common law mere continuation exception, but application of the Connecticut's "continuity

12

of enterprise" version the exception supported a different conclusion). *See generally Beriguette v. Innovative Waste Sys., Inc.*, No. CV054006895, 2009 WL 2450773, at *3 (Conn. Super. Ct. July 6, 2009) (finding no showing of a "mere continuation" where the two companies "maintain[ed] their own separate, pre-existing businesses," different employees did different jobs under different supervisors, and the two businesses were "run . . . out of separate locations using their pre-existing business practices").

### III.

Under Second Circuit precedent, it is not entirely clear which standard this Court should apply to determine successor liability under FLSA. First, it is not settled whether the Court should apply the Connecticut test, or a federal rule. Second, if the Court should apply a federal rule, it is not settled whether the Court should apply the substantial continuity approach used in the NLRA context, or the traditional common law standard. As the Second Circuit has noted, "[i]n the absence of congressional guidance on the issue of what law to apply," the Court should "look to the . . . test enunciated by the Supreme Court in *United States v. Kimbell Foods, Inc.*" *Nat'l Serv. Indus. II*, 460 F.3d at 207 (citation and quotation marks omitted; first alteration in original). "[T]he essence of [that] test is 'whether the relevant federal interest warrants displacement of state law.'" *Id.* (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 692 (2006)). There is no reason for the Court to conclude that application of the Connecticut successor liability standard would be contrary to the purposes of the FLSA – the relevant federal policy.

That said, US Stucco is the successor in interest to Unlimited Systems under any of the three standards – the Connecticut rule, the substantial continuity test, and the traditional common law rule. Therefore, in this case, the Court need not decide which successor liability standard governs.

There are several reasons why US Stucco is liable as a successor to Unlimited Systems under any of the three standards described above.[3]

First, using the Connecticut common law test, there is continuity of management, personnel, physical location and general business operations between Unlimited Systems and US Stucco. *See, e.g.*, *Kendall*, 108 Conn. App. at 331-32 (noting that under the continuity of enterprise theory, successor liability attaches where the successor maintains the same business, with the same employees doing the same jobs, under the same supervisors, working conditions, and production processes, and produces the same products for the same customers); *City of Waterbury v. Phoenix Soil, LLC*, No. UWYCV980146037S, 2009 WL 1055754, at *4 (Conn. Super. Ct. Mar. 26, 2009) (finding successor liability under the mere continuation and *de facto* merger theories where "management, personnel, physical location, assets and general business operations were identical" in the original and successor companies). While Mr. Pszczola purported to transfer US Stucco to his wife for $1.00, it is clear from Mr. Pszczola's testimony at the evidentiary hearing that the officers of US Stucco are the same people who were the officers of Unlimited Systems. It is also clear from Mr. Pszczola's testimony and other evidence that US Stucco does the same work that Unlimited Systems previously performed. *See, e.g.*, Ex. 4 to Mem. in Support of Mot. to Enforce Judgment

---

[3] Although the successor liability rules for asset purchasers often are phrased in terms of a corporation acquiring the assets of another corporation, the rules also apply to other forms of business organizations, such as limited liability companies. *See, e.g.*, *Graham v. James*, 144 F.3d 229, 240 (2d Cir. 1998) ("The traditional rule of corporate successor liability and the exceptions to the rule are generally applied regardless of whether the predecessor or successor organization was a corporation or some other form of business organization." (citation and quotation marks omitted)); *C & J Builders and Remodelers, LLC v. Geisenheimer*, 249 Conn. 415 422-23 (1999) (concluding that an LLC could be a successor in interest to a sole proprietorship); *A.G. Assocs.*, 2002 WL 1162890, at *4 (concluding that there was continuity of enterprise between an LLC and a corporation).

[doc. # 17-5] (web page entitled "About Unlimited Systems LLC"); Ex. 7 to Mem. in Support of Mot. to Enforce Judgment [doc. # 17-8] (web page entitled "About US Stucco LLC").

According to the testimony of Mr. and Ms. Pszczola, US Stucco performs its work using the same employees that Unlimited Systems used. Ms. Pszczola testified that the people who work as project managers at US Stucco also worked as project managers at Unlimited Systems. In addition, Mr. Pszczola testified US Stucco does work as a subcontractor for the same general contractors for whom Unlimited Systems worked as a subcontractor. Furthermore, Mr. Pszczola has incurred debts for US Stucco, just as he did for Unlimited Systems. *See* Bankruptcy Pet. of Robert J. Pszczola, Ex. 1 to Mem. in Support of Mot. to Enforce Judgment [doc. # 17-2] at 53 (listing both Unlimited Systems, LLC and US Stucco, LLC as co-debtors). Thus, the record shows that there is "continuity of enterprise" between Unlimited Systems and US Stucco, and the Court so finds as a fact.

Second, the evidence that demonstrates continuity of enterprise between US Stucco and Unlimited Systems under Connecticut law also establishes that there is "substantial continuity" between the two businesses under the successor liability test that the Supreme Court has endorsed in the NLRA context. That test asks:

> whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers.

*Fall River*, 482 U.S. at 43. Also relevant is whether there was a hiatus between the demise of the predecessor business enterprise and the start-up of the successor. *See id.* at 45. According to the testimony at the evidentiary hearing, there was no hiatus between the demise of the Unlimited Systems and the start-up of US Stucco.

15

Another factor that has been relevant when federal courts have applied versions of the substantial continuity test to determine successor liability in the labor law context is whether the purchasing company "holds itself out" as a successor to the seller. *See, e.g.*, *United States v. Carolina Transformer Co.*, 978 F.2d 832, 838 (4th Cir. 1992) (listing "whether the successor holds itself out as the continuation of the previous enterprise" as one of the factors relevant to the "substantial continuity" approach). As is apparent from US Stucco's website advertising, US Stucco holds itself out to the public as the successor to Unlimited Systems. Indeed, as of the date of the evidentiary hearing, the description of US Stucco on the US Stucco website replicated – virtually word for word – the description of Unlimited Systems on the Unlimited Systems website. *See* Pls.' Ex. 1C ("About US Stucco LLC"); Ex. 4 to Mem. in Support of Pls.' Mot. to Enforce Judgment [doc. # 17-5] ("About Unlimited Systems LLC"). On its website, US Stucco also listed in its "Portfolio" projects completed by Unlimited Systems. *See* Ex. 8 to Mem. in Support of Pls.' Mot. to Enforce Judgment [doc. # 17-9]. Viewing the evidence in the context of a "totality of the circumstances," *see Fall River*, 482 U.S. at 45, the record demonstrates that there is "substantial continuity" between US Stucco and Unlimited Systems under the successor liability standard applied by federal courts in the labor law context, and the Court so finds as a fact.

Third, even under the stricter traditional common law rule, *see Nat'l Serv. Indus. I*, 352 F.3d at 685, US Stucco is a "mere continuation" of Unlimited Systems because: (1) Unlimited Systems ceased operations after US Stucco was created and Unlimited Systems' assets were transferred to US Stucco; (2) the officers of US Stucco were the officers of Unlimited Systems; and (3) there is continuity of ownership between the two businesses. Essentially, the traditional common law mere continuation exception "applies when the purchasing corporation maintains the same or similar

management and ownership but wears a new hat.'" *See North Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 654 (7th Cir. 1998) (quotation marks omitted). As noted above, US Stucco was created by Mr. Pszczola, who was a fifty percent owner of Unlimited Systems, and Mr. Pszczola sold US Stucco for $1.00 to Ms. Pszczola, who was the other fifty percent owner of Unlimited Systems. Mr. Pszczola was the President of Unlimited Systems, and according to Ms. Pszczola, Mr. Pszczola is either the President or Vice-President of US Stucco. Furthermore, whatever his title, Mr. Pszczola runs US Stucco, just as he ran Unlimited Systems.

Although as of the date of the evidentiary hearing, Unlimited Systems remained registered with the Connecticut Secretary of State, according to Mr. and Ms. Psczczola's own testimony, Unlimited Systems is now defunct – it does no work and has no employees. Unlimited Systems shut down its operations at or around the time US Stucco began operations. *See* Defs.' Ex. 503 (email correspondence of Mr. Pszczola from early August 2009, signed "Robert J. Pszczola[,] Unlimited Systems LLC . . . Email: robert@usstucco.com[,] Website: www.usstucco.com," and discussing transformation of the Unlimited Systems website into the US Stucco website). In other words, it appears that Unlimited Systems' transfer of assets to US Stucco "was nothing more than the covert act of a single company shuttering and re-opening its doors simultaneously." *See Vasquez*, 2010 WL 1223606, at *15 (finding that the purchaser was not liable for the seller's FLSA obligations under a traditional mere continuation theory because there was no showing regarding the fate of the seller "immediately after the sale of its assets," and "no showing of any involvement of anyone associated with the ownership of [the purchaser] in any of [the seller's] affairs following the asset sale").

Thus, although the traditional common law mere continuation exception is narrower than either the Connecticut continuity of enterprise exception or the federal substantial continuity standard, it is

apparent that US Stucco is liable for the judgment against Unlimited Systems even under traditional common law successor liability rules. This is not a case in which there is "no overlap" in the ownership of the two businesses. *See Carolina Transformer Co.*, 978 F.2d at 838. It also is not a case in which the identity of the members and officers of the two businesses "remained distinct before and after the [transfer of assets]." *See Diaz v. South Bend Lathe Inc.*, 707 F. Supp. 97, 100 (E.D.N.Y. 1989). Furthermore, this is not a case in which prior to the agreement to transfer Unlimited Systems' assets to US Stucco, the owner of US Stucco "did not know or have any affiliation with" the owner of Unlimited Systems. *See Colon v. Multi-Pak Corp.*, 477 F. Supp. 2d 620, 624 (S.D.N.Y. 2007). This *is* a case in which the Plaintiffs not only have shown continuity of ownership between Unlimited Systems and US Stucco, but also "have . . . produced evidence to support a finding of common identity" of the officers and managers of the two limited liability companies and demonstrated that Unlimited Systems did not "continue[] to exist as a separate entity" following the transfer of assets to US Stucco. *See id.* at 627. Based on the record in this case, US Stucco is a mere continuation of Unlimited Systems under traditional common law rules of successor liability, and the Court so finds as a fact.

Fourth and finally, as the Second Circuit has noted, the FLSA is a remedial statute. *See Barfield*, 537 F.3d at 141. It would be contrary to the remedial purposes of the FLSA to allow Unlimited Systems to shed its liability to its employees through the subterfuge of "US Stucco, LLC." It was clear from the testimony at the evidentiary hearing, and the Court so finds as a fact, that US Stucco is a trimmed-down version of Unlimited Systems – it was created at a time when Unlimited Systems was insolvent, and it uses the same employees and performs the same work as Unlimited Systems did. It would elevate form over substance to allow US Stucco to escape liability for the

amounts Unlimited Systems incurred in back wages and attorney fees and costs. *Cf. Golden State Bottling Co.*, 414 U.S. at 184 ("When a new employer . . . has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations, those employees who have been retained will understandably view their job situations as essentially unaltered."); *Steinbach*, 51 F.3d at 847 (declining to ignore "the reality of the situation," and concluding that Care Ambulance, which had temporarily leased, rather than purchased, the assets of the predecessor company, "[did] not qualify as a bona fide successor"). The Court's findings of fact are "grounded in 'economic reality rather than technical concepts.'" *See Barfield*, 537 F.3d at 141 (quoting *Goldberg*, 366 U.S. at 33).

## IV.

For the foregoing reasons, the Court finds that US Stucco, LLC is the successor in interest to Unlimited Systems, LLC, and that US Stucco, LLC is thus liable for the full extent of the judgment [doc. # 11] previously entered against Unlimited Systems, LLC. Plaintiffs' Motion to Enforce Judgment Against US Stucco, LLC as Successor to Unlimited Systems, LLC [doc. # 16] is therefore GRANTED.

IT IS SO ORDERED,

/s/      Mark R. Kravitz
United States District Judge

Dated At New Haven, Connecticut: **December 14, 2010**